## A. C. ARMSTRONG, Syndic, *v.* REUBEN WHITE.

The defendant held the land in controversy under a deed from *John McGaughlin*, executed on the 13th of September, 1848, which was duly recorded.  The plaintiff's assignees claim the same land under a *sous seing privé*, from *John McGaughlin*, dated March 27, 1834.  The main question in the case was, whether the latter title was duly recorded.  It was proved that *White* had, before purchasing the land, made diligent inquiry to ascertain whether there was any other conveyance from *McGaughlin* on record, and no such conveyance could be found.  Subsequent to this purchase, the recorder found in his office, when searching the records of his office for other purposes, a book, which was endorsed, "Extracts from the Notaries in the Country, from 1827 to 1839." Among the extracts was the following : "February 4, 1834, *John McGaughlin* to *Charles Myers*, (from whom plaintiff claims,) sale of land containing 640 acres, situated," &c.  The land described was that in controversy.

The book also contained the following certificate: "I, the undersigned Notary Public, do hereby certify the above and foregoing to be extracts explanatory of all acts passed and acknowledged before me up to the first day of March instant.  Given under my hand and private seal of office this 1st of March, 1834.  Signed, *F.* *Williams*, Notary Public."

It also appeared from this book that the *sous seing privé* had been proved by a subscribing witness, and recorded by *F.* *Williams*, Notary Public, on the 4th February, 1834.

Under this state of facts, it was held that the conveyance from *McGaughlin* to *Charles Myers* was not sufficiently apparent on the public records to affect third persons.  The fact of the Notary's books being found in the recorder's office could not have that effect.

APPEAL from the District Court of the parish of Caddo, *Drew*, J.

*Crain & Nutt*, for plaintiff and appellant: Cited *Stockton* v. *Briscoe*, 1 An., 749 ; *Cotton* v. *Stacker*, 5 Ann., 677.

*Hodge* and *J. M. Landrum*, for defendant.

VOORHIES, J. (SPOFFORD, J., recused himself.)  This is a petitory action for the recovery of a tract of land.  The plaintiffs allege that the defendant, *Reuben White*, is a possessor in bad faith ; that he has, for the last two years, cultivated a field on said land, and has also committed other trespasses, by cutting timber off of the same for his own use, whereby they have sustained damages to the amount of one thousand dollars, for which they pray judgment, and also to be declared the legal owners of said land.

---

The plaintiffs also instituted suits against *Scarborough, McMullen* and *Nesbit,* for the same cause of action. *Reuben White* having since acquired the title or rights of the other defendants, those suits were cumulated with the present; so that only one decree becomes necessary to settle the controversy between the litigants.

Both parties claim to derive their titles from a common author, *John Mc-Gaughlin,* whose title is evidenced by a patent from the Government of the United States.

The plaintiffs, *Samuel W. Briggs* and *Gowen L. Briggs,* both deceased, whose estates are represented by *Andrew C. Armstrong,* as syndic, holding by inheritance from *Elias Fountain Briggs,* deceased; and *J. R. E. Robinson,* a minor, represented by his tutor, *Joseph J. Robinson,* also holding by inheritance from *Harriet Cable,* deduce their titles as follows:

On the 27th of January, 1834, *John McGaughlin* sold to *Charles Myers,* by act *sous seing prive,* the land in controversy. *Josiah Hale,* one of the subscribing witnesses to the act, appeared before *F. Williams,* a Notary Public of the parish of Natchitoches, and proved, under oath administered to him by the notary, its execution; at the foot of which the following certificate is appended:

"I certify that the within act of sale is duly recorded in my office, in Book A. of Notarial Acts, fol. 14. Given under my hand this, fourth day of February, 1834.                              F. WILLIAMS, Not. Pub."

From the certificate of the Recorder of the parish of Caddo, it appears that there was no other conveyance of the land in controversy from *McGaughlin* than the conveyance from the latter to the defendant, *White,* executed on the 13th of September, 1848.

The statement of the Hon. *J. G. Campbell* shows that the defendant, *White,* previous to his purchase of the land in controversy, applied to him to ascertain, by examination of the records of the late parish Judge's office, and such other records as might then be in the custody of the Recorder of the parish of Natchitoches, in whom the *McGaughlin* title was; that "he made a thorough search of the office, and could find no title out of *McGaughlin,* and so advised *White;* that *White* afterwards visited Natchitoches in person, when a renewed search was made by the Recorder and himself, in presence of *White,* but with no better success; that *White,* upon his return, purchased from *McGaughlin;* that, owing to some defect in the description of the land in the first deed, another was executed by *McGaughlin* to *White,* a copy of which being forwarded to the Land Office, the patent was thereupon forwarded to *White;* and that it is to his knowledge, *White* exercised great diligence, and was at considerable trouble and costs in investigating the title before making the purchase, his chief object being to ascertain whether the title remained in *McGaughlin.*

The certificate of the Recorder of the parish of Natchitoches, dated 1st of September, 1848, shows that, after diligent search, he could find no sale from *John McGaughlin* to any person, of the land in controversy. The deposition of the Recorder is also in evidence, affirming the correctness of his certificate, and adding that he was assisted in the examination of the records of his office by Judge *Campbell* and one of his clerks. "On a subsequent examination," says he, "of the records of my office, for other purposes, I found a book marked A., and written on the back, 'Extracts from the Notaries in the Country, from 1827 to 1839,' This book contains extracts, and among which I find recorded the following: '4th February, 1834, *John McGaughlin* to *Charles Myers,* sale of

ARMSTRONG
*v.*
WHITE.

land containing 640 acres, situated on the south-west bank of Red River, bounded north and above by Pascagoula Bayou, south and below by vacant land. The above land was sold for and in consideration of the sum of one hundred dollars cash.' This extract is contained, with others, in No. 74, as recorded in said extract book, and at the bottom of which is written the following certificate: 'I, the undersigned, Notary, do hereby certify the above and foregoing to be extracts explanatory of all acts passed and acknowledged before me up to the first day of March instant. Given under my hand and private seal of office, this first day of March, 1834. Signed, *F. Williams*, Notary Public.' The foregoing is all that I now recollect in relation to the matter on which I am interrogated."

None of the purchasers from *John McGaughlin*, under whom the plaintiffs claim, appear to have ever been in actual possession of the land in controversy.

Under this state of facts, the question presented is, was the conveyance from *John McGaughlin* to *Charles Myers* sufficiently apparent on the public records to affect third persons ?

We think not. But it is argued by the plaintiffs' counsel, that the recording of the abstract of the sale from *McGaughlin* to *Myers* was good against third persons, as " the authority given to record the acts of the Notary of Cloutierville, by abstracts of the title and substance inscribed in the proper book, virtually made the recording of any other act by abstract of title, etc., good, because third persons would be compelled to search this book, and if they there found that A. had sold to B. a specified tract of land, they would have notice, and would, after seeing the memorandum, buy in bad faith."

This argument finds its refutation in the fact that the Recorder, familiar as he was, we must presume, with the records of his own office, was unable himself, aided, too, by learned counsel, to discover the existence of any such transfer from *McGaughlin*.

Under an act approved the 15th March, 1822, providing for the appointment of notaries for the parishes of St. Landry and Natchitoches, it was made the duty of the notary to be appointed for Natchitoches to keep his office at Cloutierville, to be governed " by the same restrictions and priviliges " as those imposed upon the notary to be appointed for Grand Prairie. The second section of that act made it the duty of those notaries to deposit on the first Monday of every month, in the offices of the parish judges of their parishes, respectively, an extract sufficiently explanatory of the several acts passed before them, and it also made it the duty of the parish judge " *to receive and record the same.*" Admitting that the provisions of that act could be construed to apply generally to all acts passed before notaries in the parish of Natchitoches, which, however, can hardly be conceded, we are unable to perceive in what respect it could possibly avail the plaintiffs ; for it does not appear that the extract of the act from *McGaughlin* was ever " received and recorded " by the parish judge in his office. The fact that the notary's book of extracts was found in the Recorder's office, under the circumstances which we have seen, was clearly insufficient, in our opinion, to affect the defendant.

The next link which appears in the plaintiffs' chain of mesne conveyances, is a sale from *Charles Myers* to *Harriet W. M. Cable*, under whom the minor *Robinson* claims to hold, by notarial act passed before the parish Judge of the parish of Natchitoches, for one undivided third of the land in controversy. On the 29th of October, 1834, *Myers* sold the whole tract to *John Ragan*, by notarial act passed before *F. Williams*, Notary Public. An extract of this act appears

77

ARMSTRONG
*v.*
WHITE.

to have been recorded in the same manner as that in the case of the sale from *McGaughlin* to *Myers*, in the "book of extracts." It is, therefore, subject to the same fatal objection.

The last link, the sale from *Ragan* to *E. F. Briggs*, passed before the same notary, on the 20th February, 1834, is open to the same objection, in relation to its registry, as the preceding.

We do not think the present case, in relation to the question of registry, falls within the principles recognized in those of *Stockton* v. *Briscoe*, 1 An. 249, and *Cotton* v. *Stacker*, 5 An., 677, relied upon by the appellants' counsel. In the first, it appeared that the defendant, *Briscoe*, and *Gooche* had been the joint owners of the property in controversy. *Gooche* afterwards sold his interest therein to *Johnson*. *Johnson* having died, at a judicial sale of his succession, *Briscoe* purchased his undivided half of the land, of which he had always been in the *actual possession*. After *Johnson's* sale, the plaintiff, *Stockton*, obtained a judgment against *Gooche*, under which he caused the land to be seized and sold, and purchased the same himself. Mr. Chief Justice Eustis, as the organ of the court, said : " *Briscoe's* title is recorded, and was recorded before the institution of the suit by the plaintiff under which he purchased, which was commenced in December, 1840. It may be conceded that, under the decisions cited, the *sous seing privé* had no effect between the parties adversely to creditors ; but they gave it effect. *They permitted Johnson publicly to hold the property, without interruption*, until his death, under the act under private signature, and thus, by their own act, gave it effect. At the public sale of the effects of his succession, it was adjudicated to the defendant, who paid for it. The plaintiff might or not have taken advantage of the non-recording when the property belonged to the party, who may be considered in default in not recording his title ; but to permit him to disturb a *bona fide* purchaser, who holds under a recorded title, would be pushing the registry laws beyond their policy and intendment. And in the other case the court said : " *The defendant being in possession under a recorded title*, this case cannot be distinguished from that of *Stockton* v. *Briscoe*." We conclude, therefore, that the judge *a quo* did not err in rejecting the plaintiffs' demand,

It is therefore ordered and decreed that the judgment of the District Court be affirmed, with costs.